We'll go on to phase three of the argument. This is AUTHORS RIGHTS RESTORATION v. COLUMBIA PICTURES. Each side will have ten minutes. Good morning. Good morning, Your Honors. Gina Oche on behalf of AUTHORS RIGHTS RESTORATION CORPORATION, and I'll refer to it as ARC. And I would like to reserve two minutes. Sure. Thank you, Your Honor. In this case, our position is that the court misinterpreted Mexican law, in fact, disregarded Mexican law, in finding Columbia as the producer and as the only author of these films. Mexican law, I believe, is clear that, first of all, there is no definition of author, and there is no definition of the producer as being the author in this case. The court, what it did instead, was employ common law principles. It said, well, there's a work-for-hire statute here in the United States. The collaboration doctrine appears to be somewhat similar. It must be a work-for-hire statute as well. The collaboration doctrine is not a work-for-hire statute. It is merely a vehicle by which a producer or an entity or a person can exploit a particular film. In Mexico ---- But isn't that one of the fundamental rights of copyright ownership? But the issue ---- Exploitation and distribution in the United States is one of the five fundamental rights of copyright ownership. But under 104A, under the Restoration Act, the issue is who is the author. The copyright will be restored to the author of the work. You must look at the nation of origin. Can you imagine what chaos if that were really the law, that every person who participated in the production of a movie or any work of art would have the full right to distribute or exploit the work of art? Well, that might seem like a foreign concept to courts here in the United States, but it's not so in Mexico or other similar countries, as in this case testified in court, the authors or the collaborators were easily identified. It is not ---- Well, we know they're identifiable. I mean, I'm thinking, and you're right, I am well-versed in the United States copyright law and not as well-versed in Mexican law. So, but it does seem to me to defy just common sense to allow, you know, the screenwriter and the, as well as the producer, the makeup artists, the actors, to each have the full right to exploit the film. But the makeup artist is not an author under Mexican law. And to the extent Mexican law identifies who the author is, the author is the party who has moral rights and patrimonial rights. If we accepted Colombia's position, Colombia admits it only has patrimonial rights. It does not have the moral rights. So what do we do with the people who have the moral rights? And those are the people we, the assigners in the contracts in our case. They have, they're authors, too. So we still are faced with the dilemma of at least two sets of authors. What do we do with people who admittedly still have their moral rights and to the extent have some patrimonial rights? I mean, they are authors as well, and this Court has ignored any reference to the moral rights holders or those authors as well. The collaboration doctrine, again, is really just a vehicle for patrimonial rights. If we accept Colombia's position, all it received, if it remunerated its collaborating authors, and the collaboration doctrine, by the way, does say individual authors. It contemplates multiple authors of a work. It only received a right of exploitation, assuming it can prove the chain of title from the initial production company to itself later down many decades later. So what other rights are we talking about here besides the right to exploitation? Well, the Restoration Act doesn't clarify. It says copyrights, obviously. Copyrights are restored to the author. But that would take away the right to exploitation, then, because only the author has the right to exploitation under copyright law. Exactly. And so does the screenwriter. The screenwriter under Mexican law has both patrimonial rights and moral rights. The Restoration Act restored the copyrights, whatever they were, to the collaborators of these films. Nowhere in the Mexican law, whether we're talking about the civil code or the copyright version of Mexican law, does it say that the author is the producer. In fact, there are other provisions within the different variations of the law that talk about the author being a natural person, the author using the intellect to create a work. It's only in a recent phenomenon in 1996, which is not relevant to this Court's analysis, does the Mexican law then address producer. Do I understand correctly this is the same argument that was advanced and lost in the Fifth Circuit? No, Your Honor. In fact, I don't think there's anything before the Court to advise the Court or myself what was actually advanced in the Fifth Circuit. Well, what's holding it in the Fifth Circuit case? The Fifth Circuit case said that under the collaboration doctrine, a producer may be an author under the Restoration Act. But it is unclear whether or not the moral rights issue, for example, was discussed. We also don't have the same parties other than ARC. We also don't have the same films. We don't have – there's no indication that the same experts testified. We don't know what evidence was introduced in Alameda as opposed to this case before this Court. Ms. Oaks, is that how I pronounce? Oaks, Your Honor. Oaks, okay. Ms. Oaks, I presume that in what Judge – the task that Judge Ray faced was determining what was the Mexican law on this issue and who was the author under Mexican law. Is that correct? Correct, Your Honor. And to assist the Court in making that determination, he heard testimony from expert witnesses. Is that correct? Yes, Your Honor. Based upon his hearing and considering the expert witnesses, he then came up with a decision of what the Mexican law was. Now, Judge Ray, having performed that task, do we review de novo what he did or do we give deference to his perhaps choice of one expert over the other? How do we review that? Interpretation of law is a de novo. Even if it's Mexican law, dependent upon the testimony of expert witnesses. Yes, Your Honor. Well, I don't know to what extent he based his opinion on. Well, he had to because he didn't. Well, I know Judge Ray. He doesn't know anything about Mexican law. He would have to get it from the facts of his case and the experts. Understood, Your Honor. And I think what he did, again, he failed to recognize that Mexican law is not a common law. It's not common law. It's code. So you have to strictly adhere to the code. But don't you have to argue before us that the experts were wrong? Maybe that's what you're arguing. In part, the experts were wrong. I think the Court ignores some of the uniformity in opinion. We have the expert for, I believe, Ivanova. She had talked about, for example, Goldbaum's comment to Article 60, which is the collaboration doctrine under the 1947 version of that doctrine. And if you look at that, and that's at ER 450, for example, Your Honor. If you looked at his commentary, and it's really the only Mexican commentary we have, at least before this Court, in describing the collaboration doctrine, he was very careful in saying going over my time. He's saying that the whoever, the language does not mean that the producer is the author. He may have some rights of the author, which is the patrimonial rights. He obviously does not inherit or cannot be assigned the moral rights. And that's how you distinguish Alameda? Yes, Your Honor. Yes, Your Honor. And there's no discussion of moral rights in Alameda. We don't know what that Court held. And again, I think this Court itself ignored the importance of moral rights. Those rights can only be transferred by death upon the person's death. And it's a person who dies, not a corporation. Again, from very early on in Mexican law, the focus is on the human being. And it's upon death do the moral rights then can be transferred. If we accept, for example, Columbia's argument that Columbia has human being qualities and dies at some point, it's clear that it did not, itself did not inherit the rights, the moral rights of a production company upon death. I'd like to reserve the floor. Thank you. Judge Ray stated and all the parties agreed that the applicable Mexican law was silent as to who is the author of a motion picture. So he was faced with the task to listen to three experts on Mexican law to determine who should be deemed the author. And the key issue and the key factor is the Mexican collaborative works doctrine. Judge Ray did not apply U.S. law. He looked at that doctrine. And significantly, ARC's expert at trial never talked about that doctrine. And it is the key to understanding Judge Ray's ruling. Did you say your expert never talked? No, ARC's expert never talked. Oh, ARC. I thought you said our expert. I'm sorry, our expert. That's all he talked about, Your Honor. Under that doctrine, the individual contributors own all rights in the component. But the producer, be it a corporation or an individual, owns all moral and patrimonial rights in the whole so long as the producer gives attribution to the individual contributors. Now, the question that Judge Ray decided during the first trial phase, which is before the court, was not whether Columbia was the author or the successor to the author, or whether ARC was the author or the successor to the author, but whether the production company was the author or this class of contributors was the author of the motion picture. And it's very telling to hear ARC's counsel today say the key is moral rights because only the author, under Mexican law, can hold moral rights. And yet, ARC's expert was forced to concede at trial that under the collaborative works doctrine, the producer of the motion picture, be it a corporation or an individual, holds all of the rights, including moral rights, except for the right of attribution. So therefore, it is the producer who has all those rights in the entire picture, as opposed to the components who, under Mexican law, should be considered the author. Now, Judge Wardlow is quite right that the system that ARC proposes is just unworkable. And in fact, ARC has not pointed to the law of any country anywhere in the world where the author of a motion picture is the majority of all the artistic contributors. And I submit that the reason why there is no reference to such a law is that none exists. I want to speak a little bit about the res judicata issue. Excuse me. She did, counsel did mention France, that in France that's the way it was. Your Honor, French law, under French law, the director, a single person, is the author of a motion picture. And of course, French law does not apply. No, I understand that, but she was giving an example. No, I don't think she intended to tell the Court that under French law adopts this majority rule authorship principle. It doesn't. I wanted to talk a little bit about collateral estoppel. The Fifth Circuit has addressed the exact same issue that is before this Court, and that issue is for purposes of restoration under 104A of the Copyright Act, under Mexican law, who is the author? And ARC, who is here today, was a party to that dispute. And ARC argued, again, that the majority of the contributors was the author. ARC also argued in the Fifth Circuit case that under custom, an author could only be a live individual. Now, regardless of the nuances of the arguments made there and the nuances of the arguments made here, ARC was there. ARC had a fair opportunity to raise whatever arguments it could. Yeah, but we're talking about issue preclusion and claim preclusion, or sometimes called restituted collateral estoppel. Ability to have raised the issue would be a restitutado or claim preclusion argument. You're arguing issue preclusion. Well, I'm arguing both, because certainly all these claims and almost most of these key arguments were made. And the issue is the same. The claim is the same. But ARC wasn't a party to the Alameda action. No, but ARC was, Your Honor. So how does claim preclusion apply if you were ARC? I guess then we should argue issue preclusion. And if you're arguing issue preclusion, then you can't be arguing what might have been raised or what might have been decided. No, but this is no. Yes. There is no question, if the Court looks at the opinion, that the question of who is the author under Mexican law for restoration purposes was decided in that case. It was decided against ARC. There is no question that ARC made the same argument here, that it relies on there, that it relies on here, that only a natural person and not a corporation can be an author. That argument was rejected. The point that the majority of the authors under Mexican law is the author of the motion picture was squarely rejected. What about the question of the moral rights? Was that also involved? Yes, it was. Indeed, that was one of ARC's arguments there that it said only the author can hold moral rights and individuals can't hold moral rights, QED, only the individuals can be the author. But that's not true, because under the collaboration doctrine, the producer, be it an individual or a corporation, holds all of the rights except the right of attribution. Now, ARC in its reply. I wonder about that. Is that that it owns all these rights subject to the duty to give attribution? Yes, that is the only right. But attribution isn't necessarily a right. It's a duty that's imposed upon it. Is that right? Certainly under Mexican law, attribution is a moral right. Of those who contributed to that. Yes. And under the collaborative works doctrine, it is a condition of the producer owning all of the rights that he must give attribution to the individual collaborators. In ARC's reply, ARC argues that Columbia is barred from raising the res judicata argument, or collateral estoppel argument, because Columbia made the argument before Judge Ray, and he denied it, and Columbia failed to file a cross appeal. And we argue, we would argue, Your Honor, that Columbia is not required to file a cross appeal because Columbia is not seeking to expand the rights and the ruling granted by Judge Ray, but merely urges the court to adopt an alternate rationale for reaching that same result. And we also would point out that when we made the motion before Judge Ray, the Fifth Circuit had not ruled. So we could not and we did not rely on the Fifth Circuit ruling. And there are two cases, I think, that support Columbia's position directly that Columbia's res judicata collateral estoppel claim is not barred on appeal. They're not cited in our brief because this argument was raised by ARC on reply. Those two cases are Eagleson v. Burlington, 972 Fed 2nd, 1038, Ninth Circuit, 1992, and Lee v. Burlington, Santa Fe Railroad, 245 Fed 3rd, 1102, Ninth Circuit, 2001. If, unless there are any questions. Roberts. Would you mind jotting down those citations and giving it to the clerk, please? We'll do that. And a copy to counsel. Certainly. Thank you, Mr. Tedder. Thank you. Madam, back to you. Thank you, Your Honor. Again, just briefly, again, Mr. Goldbaum, the Spanish commentator to Article 60 of the Collaboration Doctrine, was very clear, again, when he said when interpreting this doctrine, it said only an individual can be an author under the law. This doctrine is different from authorship. The Collaboration Doctrine does not say a producer is the author. The trial court's finding that the producer is the author and the only author is incorrect. The Collaboration Doctrine even says that at least the right of attribution, for example, the moral right, a moral right, remains with a collaborator. The collaborators under Mexican law still have the rights to enforce their rights. The collaborators even can't copyright an entire work. If there is no collaborator, there's a section that says the editor then can do so. The court must look at Mexican law and say who is the author. The author, again, is the holder of both the moral rights and the patrimonial rights. The producer is not the creator. Again, the commentator, Goldbaum, says that very clearly. It does not create, as we understand it in the first section. Article, the Collaboration Doctrine, by the way, comes under Chapter 2 of the Mexican Statutes, or copyright, and says it comes under the publication chapter. Thank you very much. Thank you very much. Okay. We're now ready to move on to the final phase of the argument. The appeal and cross-appeal in 0256, 222, and 0355431. Mr. O'Reilly, we're back to you. You have 10 minutes. Thank you, Your Honor. Your Honor, I'm going to focus my last minutes talking about the 20 pictures. Those are the first 20 pictures made by Continflas about copyright law and about comedy, and for the respect for proceedings in other countries. So I'm going to give you a little bit of the history, and maybe you're familiar with it, maybe you're not. I ask you to bear with me. In 1993, Continflas died, as you probably know.
judges: Thompson, Silverman, Wardlaw